1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .       Criminal No. 1:10cr200
                              .
     vs.                      .       Alexandria, Virginia
                              .       August 30, 2010
LEE BENTLEY FARKAS,           .       9:45 a.m.
                              .
          Defendant.          .
                              .
.  .  .  .  .  .  .  .  .  .  .

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:           PAUL J. NATHANSON, AUSA
                              United States Attorney's Office
                              2100 Jamieson Avenue
                              Alexandria, VA 22314
                                and
                              BRIGHAM Q. CANNON, ESQ.
                              United States Department of Justice
                              Criminal Division, Fraud Section
                              1400 New York Avenue, N.W.
                              Washington, D.C. 20005


FOR THE DEFENDANT:            WILLIAM B. CUMMINGS, ESQ.
                              William B. Cummings, P.C.
                              P.O. Box 1177
                              Alexandria, VA 22313


OFFICIAL COURT REPORTER:      ANNELIESE J. THOMSON, RDR, CRR
                              U.S. District Court, Fifth Floor
                              401 Courthouse Square
                              Alexandria, VA 22314
                              (703)299-8595


(Pages 1 - 21)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

                    P R O C E E D I N G S

1

2                    (Defendant present.)

3         THE CLERK:  Criminal Case 10-200, United States of

4    America v. Lee Bentley Farkas.  Would counsel please note their

5    appearances for the record.

6         MR. NATHANSON:  Good morning, Your Honor.  Paul

7    Nathanson for the United States.  With me at counsel table is

8    Brigham Cannon from the Criminal Division, Fraud Section.  He'll

9    be handling the matter in court today.

10        THE COURT:  All right, good morning.

11        MR. CANNON:  Good morning.

12        MR. CUMMINGS:  Good morning, Your Honor.  William

13   Cummings for the defendant.  Mr. Farkas is here with me at counsel

14   table.

15        THE COURT:  All right.  And, Mr. Cummings, just for the

16   record, there was a hearing we had some time ago --

17        MR. CUMMINGS:  The 11th, um-hum.

18        THE COURT:  Right, in which Mr. Farkas was not present.

19   Did we ever get a written waiver of appearance?

20        MR. CUMMINGS:  I have a copy of that, Your Honor --

21        THE COURT:  Fine.  I just wasn't sure.

22        MR. CUMMINGS:  -- which I think must be -- I must have

23   gotten from the court records.

24        I think I got it from, from PACER.

25        THE COURT:  That's fine.  I just meant to check.  All

1 | right.  Well, very good.

2 |       MR. CUMMINGS:  It was a one-day-only waiver.

3 |       THE COURT:  Correct.  So the defendant is here today,

4 | and that's good.

5 |       MR. CUMMINGS:  Yes, ma'am.

6 |       THE COURT:  All right, there are two matters on the

7 | docket:  the government's proposed protective order and the Rule

8 | 16 discovery order.  I've reviewed the materials, particularly the

9 | most recently drafted orders that we received, I think, on August

10 | 26.

11 |       I want to know now that you've looked at the slightly

12 | revised government proposed protective order if you still have any

13 | substantive objection to it.

14 |       MR. CUMMINGS:  Well, they took out, they took out the

15 | favorite part that I had in there, Your Honor, in my proposed

16 | order, which was that I would have the -- I or whoever was defense

17 | counsel would have the ability to share documents with anybody

18 | that in the discretion of counsel would, would help advance the

19 | preparation for the defense of the defendant.

20 |       The government has --

21 |       THE COURT:  Well, I understand --

22 |       MR. CUMMINGS:  -- issue with that -- I'm sorry.

23 |       THE COURT:  I understand that, Mr. Cummings, but it's a

24 | pretty broad category of entities they have allowed you -- they

25 | would allow you to give this information to.  It includes any

1   other attorneys, paralegals, investigators, experts, and

2   secretaries employed by the attorney of record and performing work

3   on behalf of the defendant.

4           Now, other than possibly having to show some of the

5   documents to potential witnesses, I can't think of another

6   category of human beings to whom you would have any reason to be

7   disclosing the information.

8           MR. CUMMINGS:  The government's concern is set forth in

9   their response to our motion here, and they feel somehow -- and

10  perhaps because they were talking to counsel who had been here

11  back at the time of the arraignment, Mr. Houlihan and

12  Mr. Harris -- that they might take large portions of the data and

13  share them with counsel representing potential other defendants,

14  other people who were employed at high-level positions at either

15  TBW or Colonial Bank.  That's never been my thought of how to

16  present this case or prepare this case.

17          I think their theory for that was perhaps that those

18  people who may have had counsel that they could afford to pay to,

19  to study some of these large-scale volume of documents might help

20  them find things that might be exculpatory, whereas right now

21  they're working on a shoestring.

22          I now have the authority to hire paralegals to do a lot

23  of that kind of work, the same kind of work that a firm would be

24  doing working for one of these other people.  Nevertheless, if at

25  some time I find the need, I would think, to share some of this

1    material with an attorney representing one of these people not yet

2    charged, I think the government's theory of how they've drafted

3    this order I would be prevented from doing so.

4          Those are not attorneys engaged by me to work

5    exclusively for me on the defense of this particular individual,

6    like the paralegals and Mr. Williams in my office and other people

7    like that, investigators or accountants or other kinds of

8    professionals that I might engage directly under my control.

9          Handing over large lumps -- you know, large-scale,

10   wholesale documents to another attorney representing some other

11   defendant I don't think is in my client's best interest at this

12   time since I would have the resources to have somebody go through

13   those and make some sense out of this humongous amount of data,

14   but I think that's the issue we have before Your Honor, whether or

15   not in counsel's discretion they should be able to share this with

16   people that are not engaged or employed under their counsel's

17   direct control because these folks would be representing somebody

18   else who might be charged in this case.

19         THE COURT:  Well, I think one of the ways of handling

20   that is to add an extra -- is to add some extra language to the

21   government's order that should counsel have need to disclose this

22   information to anybody beyond those described in paragraph 3, they

23   must first get permission from the Court, and that could be done

24   even ex parte.

25         MR. CUMMINGS:  Well, I think if it was done ex parte, I

1  wouldn't have any problem with it. Again, the issue always is in

2  a case like this to show your hand to the government in a case

3  like this --

4           THE COURT:  I understand that.

5           MR. CUMMINGS:  I wouldn't have any problem with that.

6           THE COURT:  It's the same way in which you were able to

7  apply to the Court ex parte for funds under the CJA to assist you

8  in your defense.

9           MR. CUMMINGS:  Right.

10          THE COURT:  The government has no right to know exactly

11 what you've requested or, you know, for what particular types of

12 jobs.

13          MR. CUMMINGS:  Right.

14          THE COURT:  So I think language of that sort added to

15 this order would give you the protection that you need.

16          MR. CUMMINGS:  I would have no problem with that, Your

17 Honor.

18          THE COURT:  All right.  I'll ask the two of you,

19 counsel, to get together.  I don't want to have to draft it.

20          MR. CUMMINGS:  That's fine.

21          THE COURT:  All right.  Take the government's protective

22 order, the one that was filed on August 26, add that additional

23 language at the very end, and the only other thing that I think

24 should be changed, just -- it's a minor point, but in paragraph 3,

25 you say "attorneys of record."

1          Well, Mr. Farkas may get sued by the SEC -- or I guess

2     he already has been.  He may get sued by individuals, and

3     technically speaking, any attorney of record could possibly fall

4     under this.  I think it should be "attorneys of record in this

5     case."  The words "in this case" should be added there.

6          MR. CUMMINGS:  Okay.

7          THE COURT:  All right?  And then as I said, the last

8     paragraph, which would be paragraph -- I guess make it paragraph

9     7, and then your old paragraph 7 would become new paragraph 8.

10    Paragraph 7 would be something to the effect if counsel for the

11    defense needs to disclose this information to anyone not described

12    in paragraph 3, they must first approach the Court for permission

13    to do so.

14         And I will just put this orally on the record.  I would

15    look at such a request.  I mean, there'd have to be -- it can be

16    filed ex parte, and it can spell out the reasons.  If I'm

17    concerned, we might have to work out some redacted way of talking

18    about the matter in a somewhat cryptic manner and let the

19    government have some input.  In other words, I'm not going to

20    guarantee that I'd necessarily just respond to it on an ex parte

21    matter -- manner.

22         MR. CUMMINGS:  I understand that, Your Honor.

23         THE COURT:  All right?

24         MR. CUMMINGS:  I understand.

25         THE COURT:  So that takes care of the protective order.

1          MR. CUMMINGS:   The other question I had, Your Honor,

2  it's a little vague to me --

3          THE COURT:   Yeah.

4          MR. CUMMINGS:   -- on paragraph 6 of the existing order,

5  it says nothing shall restrict the attorney, blah, blah, blah.

6  Then it goes on to say, "Defendant's attorneys . . . must redact

7  any personal identifying information," etc., "in accord with

8  Federal Rule of Criminal Procedure 49.1."

9          Well, I'm a little concerned.   49.1 has to do only when

10  you're putting matters in for evidence at trial, and it lists the

11  kinds of things that you have to redact.   If that's, if that's the

12  purpose of having this language and this here, I have no problem.

13          If it's designed to say the kinds of information that

14  49.1 talks about in terms of redacting for evidence at trial shall

15  also be the kinds of information that should be redacted if a

16  document is shown to other persons, it doesn't say that, and I

17  think somehow in their justification memo, they seem to be

18  implying that that's what they're using this language for, and I'm

19  confused by it.

20          THE COURT:   Well, the other thing is under this

21  protective order, it's a little bit like an order you get in a

22  national security case.   It does require that any entity to whom

23  you disclose this information is -- or should include some kind of

24  an order that they sign recognizing their obligations to keep the

25  information private, confidential, and that would resolve any

1   disclosure problem of personal identifiers.

2           MR. CUMMINGS:   That's fine.   I'll work up a disclosure

3   agreement, show it to the government, which will have everybody

4   who -- with whom I have contact or had the documents will

5   acknowledge that they've read this record and agree to be bound by

6   the terms.

7           THE COURT:   I think that will adequately protect both

8   sides.

9           MR. CUMMINGS:   Right.

10          THE COURT:   Yes.   All right?   And that should also

11  include some language along the lines that are in paragraph 7

12  about the return of the materials or destruction.

13          MR. CUMMINGS:   Oh, yeah.   If they have the documents,

14  they'll have to return them.

15          THE COURT:   Yeah.

16          MR. CUMMINGS:   No question about that.

17          THE COURT:   All right?

18          MR. CUMMINGS:   Yes, ma'am.

19          THE COURT:   Good.   So we're set on that.

20          Now, the other one was the discovery order.

21          MR. CUMMINGS:   Yeah.   I want to say for the record the

22  government thinks that I was implying that they have somehow

23  dragged their feet.   I didn't mean to suggest that, that the

24  government itself was dragging their feet.

25          I was really trying to refer to the long period of time

1   since the arraignment, which I don't think the government

2   necessarily is to blame for.  I've been in the case now just a

3   little over two weeks, so my point was that which would normally

4   have been produced in due course from the date of the arraignment

5   now should be expedited because of that long period of time

6   through no fault necessarily of the government to not have it.

7          They have begun to do that.  I had some documents

8   produced to me most recently last week, and I understand today

9   I'll going to get access to a lot more things fairly rapidly,

10  but --

11         THE COURT:  Well, I'm not going to require them to do a

12  forthwith production, because I have a suspicion, No. 1, if they

13  did, it might overwhelm you given the amount of documents here,

14  and if they're all basically on a, on a disk, I mean, that's a

15  fairly simple production.

16         MR. CUMMINGS:  I think they're on this database

17  primarily.

18         THE COURT:  Oh, on a database.

19         MR. CUMMINGS:  Accessing it through a computer.

20         THE COURT:  But that database is complete at this point,

21  correct?

22         MR. CUMMINGS:  I'm not sure it's totally complete, Your

23  Honor, but I don't know that for certain.  I mean, there are -- in

24  the four spreadsheets that I got of discovery material, only one

25  was on the database.  One other was documents that were going in

1  the database, and other things were still in some stage of

2  production.  I can't -- Mr. Cannon can tell you what the current

3  state is of the database.

4          THE COURT:  All right.  Now, putting that one issue

5  aside, do you have any objection to the ten-business-day time

6  period for the disclosure of Jencks, *Giglio*, and that sort of

7  thing?

8          MR. CUMMINGS:  Well, we always have a problem with that,

9  as Your Honor well knows, and I'm glad to see ten days instead of

10  what used to be five days in those, in those older discovery

11  orders.  I would like to have at least three weeks, maybe more.

12          I haven't yet filed a motion for a, for a new trial

13  date, but certainly it's under consideration, Your Honor.  I have

14  to file my motions either by tomorrow or, or by Wednesday, and

15  again, I'm going to be probably asking the Court for a little more

16  time to file motions since I haven't even begun to look at the

17  discovery and know what issues might come up from that.

18          Many times motions that we file, as you know, have to do

19  with the discovery or access or things of that nature.  So I would

20  ask the Court -- I'm going to file that motion tomorrow.  It's not

21  on today's docket --

22          THE COURT:  All right.

23          MR. CUMMINGS:  -- but I am going to have to ask for some

24  additional time, and whether or not we ask -- and, of course, we

25  have a motion which we just filed last week set for the 10th for a

1  transfer.

2       Again, I'm not asking the Court to begin even to think

3  about that at this stage, but certainly how that motion is dealt

4  with may well affect whether I will need more time or some other

5  judge will be setting dates.

6       THE COURT:  All right.  Well, there's still a lot of

7  preliminary issues in this case, but I want to make sure that I

8  understand the status of the discovery from the government.  Is

9  all or essentially all of the what I'll call financial data now on

10 that Web site?

11      MR. CANNON:  Yes, Your Honor.  There are certainly

12 categories of information, some of which are easier to put on a

13 database, searchable database, like e-mails and other kinds of

14 data.  There are other kinds of financial data that we will make

15 available and provide to the defense immediately in sort of hard

16 drive format.

17      So it's not on the database, but it's not really a

18 searchable format, like the accounting drives of TBW don't really

19 lend themselves to word searches, but they will have them in their

20 native format in hard drives upon entry of the protective order,

21 and on the database now, there are certainly almost all of the

22 relevant data that would be necessary for preparing for trial.

23      And I would say almost because it's an ongoing

24 investigation, and there are still some things coming in, and

25 we're putting those up on the database as soon as they come in,

1   and to the extent that the defense will have access to that

2   database today or very soon, we have representatives from our

3   contractor here today for them to fill out the paperwork.  The

4   defense will get access to that as soon as the government does.

5          THE COURT:  All right.  Well, at some point, the

6   government has to cut it off.

7          MR. CANNON:  I know.

8          THE COURT:  I mean, you've obviously been investigating

9   this case for some period of time, and what I don't want to have

10  happen is, you know, three weeks before trial, there's a whole new

11  dump of a hard drive or a whole new batch of data that defense

12  counsel has to start absorbing.

13         So you're going to need to make sure you get everything

14  together and get it in, and at some point, just whatever else

15  comes in you don't get to use.

16         MR. CANNON:  No, we understand.

17         THE COURT:  All right.

18         MR. CANNON:  And we will work with defense counsel and

19  the Court to make sure that everything is smooth leading up to

20  trial.

21         THE COURT:  All right.  Now, Mr. Cummings, let me ask

22  you another question, because I just want to make sure this case

23  keeps on track.  You are the only attorney of record in this

24  case --

25         MR. CUMMINGS:  Yes.

1      THE COURT:  -- and I know that, you know, there were two

2  original counsel who did not enter a formal appearance.

3      They were the individuals who Mr. Farkas wanted to

4  retain, but are they still attempting to work out some deal either

5  with the bankruptcy court or the insurance carrier?

6      MR. CUMMINGS:  They are, Your Honor.  It's my

7  understanding, I saw an e-mail that Mr., I think it was

8  Mr. Houlihan exchanged with Mr. Stokes last week about properties

9  and things like that, other things, assets that might be freed up

10  that might be available, that sort of thing, and Mr. Stokes said

11  the government would be working with them to continue on that, and

12  there are other issues that are outside the authority of the

13  Justice Department directly to control other agencies that have

14  limitations on some of the assets.

15      They're still working on it.  I don't, I don't want to

16  say that I would be optimistic based upon the exchange that I saw

17  last week, but they're still interested in, in trying to get

18  assess to sufficient funds so they can come in the case.

19      THE COURT:  All right.  Mr. Farkas, again, I know you

20  had attorneys whom you wanted.  The Court was concerned that since

21  they could not come in, your case was just languishing, and so we

22  have appointed Mr. Cummings.  Have you any objection to

23  Mr. Cummings working for you at this point?

24      THE DEFENDANT:  Well, I sent you a letter, Your Honor.

25      THE COURT:  I haven't seen it, so why don't you tell me

1  what you had in the letter.

2           THE DEFENDANT:  I do object --

3           THE COURT:  Go up to the lectern.

4           THE DEFENDANT:  Yes, I have objections to it.  I do.  I

5  don't think that I can get a fair shot at this.  I'm fighting for

6  my life here, and I'm innocent of these charges, and the

7  government has had over a year where I've had no access to any of

8  this data, and we have a very, very short period of time, and it's

9  very, very critical to me that we get this worked out.

10          Mr. Houlihan has been working, trying to work with

11 Mr. Stokes to release some documents.  It's not my fault that,

12 that they won't let some of the assets be released.  I think they

13 finally decided on one little piece of property they can release,

14 but they're still having a very difficult time.

15          I have confidence in those gentlemen as my attorneys.  I

16 mean, they are retained by me.  They can't enter into this case

17 for whatever; I don't understand those reasons; and they are

18 working with me now, you know, and with Mr. Cummings as well; and

19 I'm sure he's a very fine lawyer; but I don't know him; and I'm,

20 frankly, I'm very, very anxious and scared of what will happen to

21 me if he's my sole representative in this case.  I feel very

22 uncomfortable.

23          THE COURT:  Well, a defendant has basically three

24 options in court.  He can always represent himself, the Sixth

25 Amendment gives you that right, as long as the Court is satisfied

1  the defendant is mentally competent to make that decision.

2         The defendant can hire attorneys who enter their

3  appearance, and as long as they're qualified to appear in court,

4  that is, they comply with the local rules, and one of the local

5  rules, as I'm sure you know, in this Court is there has to be a

6  local counsel.  I think the attorney from D.C. would have

7  qualified as local counsel, as I would recall; in other words,

8  he's admitted to the Eastern District; but in this case, that's up

9  to the defendant.

10        If a defendant is unable to retain counsel, which for

11 the record at this point is your situation because the attorneys

12 who -- Mr. Houlihan and his cocounsel have not been prepared to

13 enter an appearance in this case, then the third option is for the

14 Court to appoint counsel, and I just want to make sure you

15 understand that we appointed you a very experienced criminal

16 defense attorney.

17        If you've done any homework into Mr. Cummings'

18 background, this is not some inexperienced attorney who has not

19 handled major, major, complex litigation.  He may have a small law

20 firm, but the Court has given him access to resources that a large

21 firm would have as well.

22        A person who is accepting or who is given

23 court-appointed counsel does not have the right to pick and choose

24 who that counsel is going to be.  I just want to make sure you

25 understand the situation right now.

1         If the attorneys whom you wanted to retain are unable to

2    come into this case and it's through no fault of the Court -- and

3    as I understood the problem, most of the assets that could be used

4    to pay for counsel are tied up in bankruptcy proceedings and some

5    insurance policy.  I remember at one of our earlier discussions,

6    there was some insurance that your counsel had thought might help

7    to pay their costs, is somehow still not worked out, but if you're

8    unable to retain counsel, then your only options are to go with

9    Mr. Cummings or to go pro se.

10        THE DEFENDANT:  Well, not to be disrespectful, Your

11   Honor, but I do have assets that could be used.  The government

12   has not, I don't feel, negotiated with them in good faith to

13   release some things.

14        There is a $5 million insurance policy that the

15   bankruptcy court has been sitting on.  Again, this isn't of my

16   doing.

17        You know, I didn't ask for this, and certainly I need a

18   better defense than, than a court-appointed attorney for myself.

19   I don't feel I can get a fair trial, and I'm sorry, I don't mean

20   to be disrespectful to you, but we have counsel that I have

21   confidence in that are ready, willing, and able to come into the

22   case if we can release some of my assets, but Mr. Stokes in his

23   conversations with them is, is -- doesn't want to release anything

24   that could make up the -- they have to make up the deductible.  I

25   need another $500,000 to get to the deductible.

1          And there, as you know, are 19 million documents that

2    the government has been working on.  How many scores of people in

3    the government are working on this?  And I have a lawyer who

4    doesn't know anything about the case, who I -- who he and I have

5    very, very important differences in how the case should be done,

6    and I have a very, very small amount of time.

7          There's no way we can even look at 1/100 of the

8    documents that the government has provided, and all I'm asking is

9    that we make a good faith effort to allow some of those assets to

10   be -- I don't think it would -- I mean, it would just, it would

11   just be fair to me to allow some of those assets to be released so

12   that Mr. Houlihan and his other folks can come into the case and I

13   can get the representation that I feel would be fair.

14         I mean, that's -- again, we're talking about, you know,

15   the rest of my life.

16         THE COURT:  Well, I understand that, but also at this

17   point, I mean, there's no motion before the Court.  That's really

18   not the question I had for you.  I just wanted to determine the

19   nature of your relationship with Mr. Cummings, because you were

20   not in court when I made the decision to appoint him.

21         At this point, assuming the worst possible scenario from

22   your standpoint, and that is that your retained counsel do not

23   ever enter an appearance in this case, are you prepared to go pro

24   se, or do you want Mr. Cummings to continue to represent you under

25   the Criminal Justice Act?

1        THE DEFENDANT:  I don't, I don't know, Your Honor.

2        THE COURT:  Well, you need to give me an answer.

3        THE DEFENDANT:  Well, Your Honor, I don't understand.  I

4 don't know.

5        THE COURT:  All right.  At this point, I'm not finding

6 there's an objection that's sufficient to change the nature of the

7 representation situation.  There has to be an affirmative request

8 to proceed pro se, and I'm not hearing that.

9        In any case, I do want it on the record, because I did

10 check the box on the form that appointed -- that authorized funds

11 in this case, if funds are released to cover retained counsel and

12 they then come into the case, because the Criminal Justice Act is

13 a limited resource, I'm going to require that any funds that have

14 been expended by Mr. Cummings would have to be reimbursed to that

15 fund as well.

16        Now, if Mr. Cummings is retained to stay on in the case

17 in some capacity, we can adjust some of that perhaps, but the

18 point is I'm not going to allow a defendant to have a significant

19 portion of the defense paid for by the CJA and then have retained

20 counsel come in at the very, very end.

21        All right, at this point then, I'm leaving you in the

22 case, Mr. Cummings, and, Mr. Farkas, my recommendation to you is

23 to cooperate with the counsel whom you do have at this point.

24 It's never to a defendant's -- in a defendant's best interests to

25 not listen carefully.

1       And as I said, if you check Martindale-Hubbell or you

2  have your counsel, Mr. Houlihan, check into Mr. Cummings'

3  background, I think they can assure you you've got an extremely

4  experienced attorney, and he has now got resources for paralegals

5  and others to assist in digesting this evidence.

6       All right, that's all that we have on this case.  The

7  next matter is set, I believe, for the 10th; is that correct?

8       MR. CUMMINGS:  That's correct, Your Honor.

9       THE COURT:  And we'll hear the motion to transfer at

10  that point.

11       Was there anything further on this then?

12       MR. CUMMINGS:  No, Your Honor.

13       THE COURT:  On the discovery order then, I'm going to --

14  at this point, I do think that since this is a white collar case,

15  that more time -- and I congratulate the government on suggesting

16  10 days, but I think that 20 business days would be more

17  appropriate in terms of the time periods for those disclosures.

18       MR. CUMMINGS:  Thank you.

19       THE COURT:  And so I will for the *Giglio*, Jencks, and

20  the 404(b) change that in the order to 20 days.  I'll probably

21  just interlineate that, because the rest of the order looked to me

22  to be just fine.

23       All right, anything further on these two issues?

24       MR. STOKES:  No, not from the government, Your Honor.

25       THE COURT:  Mr. Cummings?

1          MR. CUMMINGS:  No, Your Honor, thank you.

2          THE COURT:  All right, we'll call the next case.  Thank

3  you.

4                         (Which were all the proceedings

5                          had at this time.)

6

7                    CERTIFICATE OF THE REPORTER

8      I certify that the foregoing is a correct transcript of the

9  record of proceedings in the above-entitled matter.

10

11

12  _____ /s/ _____
                          Anneliese J. Thomson

13

14

15

16

17

18

19

20

21

22

23

24

25