IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:10cr200 (LMB) |
| LEE BENTLEY FARKAS, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Defendant's Motion to Transfer the Proceedings in this
Matter for Trial was argued in open court and orally denied.
This memorandum opinion provides further explanation for the
denial of the Motion.

I. BACKGROUND

On June 15, 2010, Lee Bentley Farkas was indicted in the
Alexandria division of this district on one count of conspiracy
under 18 U.S.C. § 1349, six counts of bank fraud under 18 U.S.C.
§§ 1344 and 2, six counts of wire fraud under 18 U.S.C. §§ 1343
and 2, and three counts of securities fraud under 18 U.S.C. §§
1348 and 2.  Some of the wire and bank fraud counts involve wire
payments transmitted to the Federal Reserve's servers in
Richmond, Virginia, and one wire fraud count involves an e-mail
routed to Federal Deposit Insurance Corporation servers in
Arlington, Virginia. Farkas, a resident of Ocala, Florida, has
moved to transfer the case to the United States District Court
for the Middle District of Florida under Federal Rule of Criminal

Procedure 21(b).

The indictment alleges that Farkas and co-conspirators devised a nearly $2 billion dollar fraud scheme, which included an attempt to defraud the Troubled Asset Relief Program.[1] Farkas was chairman and majority shareholder of Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), a mortgage lending company based in Ocala, Florida.  TBW originated, purchased, and serviced residential mortgage loans and sold them to investors and commercial financial institutions.  TBW's principal source of income came from servicing the mortgage loans it sold to the Federal Home Loan Mortgage Corporation ("Freddie Mac"), which is located in the Alexandria division of this district.  As a loan servicer, TBW collected mortgage payments from borrowers and passed the money on to the investors, earning a servicing fee that was based on the borrower's payment. If borrowers did not pay their mortgages on time, TBW advanced the payments to the investors. TBW received short-term, secured funding from Colonial Bank, a subsidiary of Alabama-based Colonial BancGroup.

The government alleges that beginning in 2002, TBW experienced serious cash flow problems. Conspiring with TBW and Colonial Bank employees, Farkas allegedly devised a scheme to misappropriate funds from Colonial Bank.  Among the alleged

---

[1] The following facts are alleged in the indictment and taken from the government's Response to this motion.

fraudulent acts were the transfer of money between accounts to hide overdrafts and the sale of Colonial Bank mortgage loans that did not exist.  Using Ocala Funding, LLC, a TBW subsidiary, Farkas and his co-conspirators allegedly sold loans owned by Colonial Bank to Freddie Mac without paying Colonial for the loans.

In October 2008, Colonial Bank applied for $570 million from the Troubled Asset Relief Program ("TARP"), a program that Congress created to rescue distressed financial institutions. The government approved $553 million in TARP funding, conditioned on Colonial BancGroup raising $300 million in private investments.  The government alleges that Farkas and his co-conspirators misrepresented that Colonial BancGroup raised $300 million, including $150 million from TBW.  On April 1, 2009, Colonial BancGroup electronically reported these investment agreements to the Securities and Exchange Commission, whose servers are located in Alexandria, Virginia.  Colonial BancGroup never received TARP funds.  Colonial BancGroup and TBW filed for bankruptcy in August 2009.

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 21(b) allows a court to transfer a criminal proceeding to another district "for the convenience of the parties and witnesses and in the interest of

3

justice." The defendant bears the burden of demonstrating inconvenience, and "[t]he decision whether to transfer a case is committed to the sound discretion of the district court." United States v. Heaps, 39 F.3d 479, 482 (4th Cir. 1994). The district court's decision on a Rule 21(b) motion is reversed only for abuse of discretion. Id.

### III. DISCUSSION

A court may transfer venue under Rule 21(b) if the defendant demonstrates that prosecution in that district would "result in a substantial balance of inconvenience" to the defendant. United States v. Ferguson, 432 F. Supp. 2d 559, 560 (E.D. Va. 2006). In considering whether to transfer a criminal case, the court should consider the following factors, known as the Platt factors: "(1) location of the defendant; (2) location of witnesses; (3) location of events likely to be in issue; (4) location of documents and records; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessability of the place of trial; (9) docket conditions in each district; and (10) any other specific element which might affect the transfer." Heaps, 39 F.3d at 483 (citing and upholding the use of factors from Platt v. Minnesota Mining & Manufacturing Co., 37 U.S. 240, 243-44 (1964)).

### A. Defendant's location

The government concedes that Farkas's location in Ocala,

Florida weighs in favor of transferring the case to the Middle
District of Florida.  The government and Farkas disagree about
the weight that the Court should give this factor.  In his
pleadings Farkas argues that the Fourth Circuit has held that "a
criminal defendant should be tried in a court close to where the
defendant lives."  Def.'s Mem. of Law in Supp. of Mot. to
Transfer at 8.  The only Fourth Circuit case he cites for that
proposition is <u>United States v. Lenihan</u>, 19 F.3d 1430 (4th Cir.
1994), which has nothing to do with Rule 21(b).  <u>Lenihan</u> involved
a defendant who was convicted in the District of Maryland.
Lenihan argued on appeal that venue in the District of Maryland
was improper under Rule 18 because no element of the crime
occurred in the district; however, the Fourth Circuit denied
relief finding that the defendant had not timely objected to
venue.

The more relevant decision is Judge O'Grady's conclusion
that criminal defendants "have no right to be tried in their home
district, nor does the location of the defendant's home have
independent significance in determining whether transfer to that
district would be in the interests of justice."  <u>United States v.
Offill</u>, Case No.: 1:09-cr-134, 2009 U.S. Dist. LEXIS 48866, at *8
(E.D. Va. June 10, 2009) (citations and internal quotation marks
omitted).

Although the location of the defendant is a <u>Platt</u> factor

5

supporting transfer, it is not a dispositive factor, and Farkas
has cited no binding authority to suggest that the defendant's
location should weigh more heavily than the other <u>Platt</u> factors.

### B. Location of possible witnesses

Farkas provided the Court with a list of mostly Florida-
based witnesses and argues that "[v]irtually all of the witnesses
are located in Florida, or geographically near to Florida, and,
specifically, the Middle District of Florida." Def.'s Mem. of
Law in Supp. of Mot. to Transfer at 9.

The government counters this description of the probable
witnesses, noting that Paul Allen, a senior TBW executive who
worked closely with Farkas, lives in the Alexandria Division of
the Eastern District of Virginia. They also emphasize that much
of the alleged fraud involved TBW's business dealings with
Freddie Mac, which is headquartered in the Eastern District of
Virginia, and Ginnie Mae, which is headquartered in the District
of Columbia. Most likely, current and former Freddie Mac and
Ginnie Mae employees will be witnesses. The government also
argues that other potential witnesses worked for financial
institutions based in Chicago and New York, and they are closer
to the Eastern District of Virginia than to the Middle District
of Florida.

Farkas's witness list is largely a roster of former TBW
employees. The list only identifies the TBW division where they

6

worked, and it does not provide information about their job responsibilities or the reasons they might be called as witnesses.   Moreover, Farkas lists potential witnesses outside of Florida, from states including Alabama, Georgia, California, Illinois, Kentucky, Tennessee, Colorado, and New Jersey.

Other than describing their locations, Farkas does not sufficiently demonstrate inconvenience to any of his potential witnesses from having to travel to northern Virginia for the trial.   Farkas merely argues that a trial in this district "would cause significant personal inconvenience for all of those possible witnesses" because of greater travel expenses.   Def.'s Mem. of Law in Supp. of Mot. to Transfer at 11.   However, travel expenses are not borne by the witness; they must be paid by the party calling the witness. Fed. R. Crim. P. 17.   "'Generally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer.'   Rather, a defendant 'must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial.'"   Offill, 2009 U.S. Dist. LEXIS 48866, at *8 (quoting U.S. v. Spy Factory, Inc., 951 F. Supp. 450, 456-457 (S.D.N.Y. 1997)).   Farkas has failed to provide such detail.

## C. Location of events likely to be in issue

Farkas attempts to portray the indictment as alleging merely a local crime that did not extend beyond the Florida border.   But

the grand jury indicted Farkas for devising a massive, nationwide fraud on financial institutions and the federal government's program to save the nation's financial sector. There is nothing inherently local in these allegations.

Farkas argues that although the location of the SEC servers in this district establishes venue, the Court should nonetheless transfer the proceedings because the location of the SEC servers provides a weak reason for venue. Farkas relies on <u>United States v. Ferguson</u>, 432 F. Supp. 2d 559 (E.D. Va. 2006), which transferred a securities fraud case from this district to the District of Connecticut, after finding that the location of the SEC's servers was insufficient to establish venue without "a greater connection with this district, especially in this case where the majority of the alleged criminal activity took place in Connecticut and New York." <u>Id</u>. at 566.

The charges against Farkas differ significantly from those in <u>Ferguson</u>. Farkas incorrectly suggests that the SEC's servers provide the only connection to the Eastern District of Virginia, ignoring the fact that TBW's business with Freddie Mac was essential to the alleged fraud. At the hearing on this motion, the government produced eight exhibits, consisting of e-mails and meeting agendas that documented at least seven of Farkas's meetings at Freddie Mac's headquarters in McLean, Virginia between 2006 and 2009. Moreover, Allen, the former TBW

8

executive, lived in the Alexandria Division of the Eastern District of Virginia throughout the time of the alleged fraud and conducted some business from his residence on behalf of TBW.

As the government argues, the fraudulent activities alleged in the indictment extended well beyond the Middle District of Florida. One of the primary private victims, Colonial BancGroup, was based in Alabama. Chicago-based LaSalle Bank, N.A. maintained files for mortgage loans purchased by Ocala Funding. Ocala's investors included Deutsche Bank and BP Paribas, both located in New York City. In short, the allegations extend to extensive nationwide activity. Therefore, this <u>Platt</u> factor does not support transfer.

### D. Location of documents and records

Farkas acknowledges that the physical location of documents is "not particularly relevant" because the government has digitized about 19 million pages of documents into a searchable, online database. But Farkas argues that it is inconvenient to coordinate review of these documents with his Virginia court-appointed counsel. Given the wonders of modern communication technology, the Court finds that Farkas and his counsel can effectively communicate via telephone, e-mail, or teleconferencing, and they can access the database from any location.

During oral argument, Farkas's attorney stated that the

database is difficult to search.  Transferring this case to the Middle District of Florida would not address any concerns about the database.  In fact, a transfer could exacerbate the problem because the contractor that developed the database is headquartered in the Eastern District of Virginia.  Farkas's Alexandria-based attorney can easily meet with database managers to learn about the system and discuss problems, whereas if the case were transferred, current Virginia counsel could no longer represent the defendant.  Defense counsel in Florida would have a more difficult time working with the Virginia contractor.  Therefore, this Platt factor does not support transfer.

### E. Disruption of the defendant's business

Farkas argues that a trial in the Eastern District of Virginia would disrupt his three Ocala-based businesses: Compass, Ipanema, and Cactus, which employ about 120 people.  Farkas does not provide clear details about his specific responsibilities in these businesses.  Moreover, as the government argues in its Response brief, although Farkas was required to report all assets before he could be released on bond, he did not report ownership of any of these three businesses.

The government states that Compass is a gym or health club that Farkas surrendered to a landlord to satisfy a debt for unpaid rent.  Ipanema is a restaurant, and Cactus is a car wash. In a deposition on June 3, 2010, Farkas said he does not own

10

Cactus, although Sean Murla, an associate of Farkas, stated that Farkas was a co-owner of Cactus and Ipanema.  In his Reply brief, Farkas disputed some of the government's characterizations but still did not provide a clear picture of his ownership interest or specific involvement in these businesses.

Even if Farkas still has an active role in these companies, any criminal trial would disrupt his work, regardless of the location of the trial. See Offill, 2009 U.S. Dist. LEXIS 48866, at *11 ("Any criminal case is likely to disrupt a defendant's business.").  Therefore, the Court does not find that this Platt factor supports transfer.

### F. Expense of the parties

A trial in Virginia or Florida would impose financial burdens on the parties.  A trial in Virginia would require Farkas to travel from Florida, and a trial in Florida would require government prosecutors to travel from Virginia.  Relying on a district court opinion from the Third Circuit, Farkas argues that the Court should not consider the expenses to the government because the federal government "has, for all practical purposes, unlimited financial resources to bring to bear." (quoting United States v. Coffee, 113 F. Supp. 2d 751 (E.D. Pa. 2000)).  Even if this holding were binding precedent in the Fourth Circuit, this argument would fail because the Government is not only paying for the prosecution, but is currently covering Farkas's litigation

11

expenses under the Criminal Justice Act, 18 U.S.C § 3006. Therefore, the Court does not find that this <u>Platt</u> factor supports transfer.

## G. Location of counsel

Because most of Farkas's assets are seized or frozen, he argues that he cannot pay for his counsel of choice, one of whom is in Florida. The Court appointed Alexandria-based counsel for Farkas, and that attorney filed this motion to transfer. Farkas acknowledges that the Eastern District of Virginia is more convenient for his current counsel. Because Farkas has indicated he does not want to be represented by his Virginia counsel, the Court permitted Farkas to travel to Kentucky to interview a potential attorney. If Farkas were to retain a Kentucky lawyer, he certainly could not support the argument that location of counsel favors Florida. Given the airport and mass transit facilities so close to Alexandria, Virginia, this district would be more convenient for the Kentucky lawyer than the Middle District of Florida. Moreover, defense counsel's residence outside of a district "is an inconvenience of [the defendant's] own choosing. No claim is made, or can be made, that competent and experienced counsel cannot be found in this district." <u>United States v. Lindh</u>, 212 F. Supp. 2d 541, 552 (E.D. Va. 2002). Therefore, the Court does not find that this <u>Platt</u> factor supports transfer.

12

## H. Relative accessability of place of trial

The Alexandria federal courthouse is five miles from Washington Reagan National Airport and 30 miles from Dulles International Airport, and the courthouse is a short walk to two Metro stops that connect directly to National Airport.  In contrast, the Ocala courthouse is almost 90 miles from a large airport.  The Orlando courthouse, which Farkas suggests as an alternative to Ocala, is almost 13 miles from the airport and not easily accessible by public transit.

Farkas acknowledges that many of his witnesses would come from the Colonial BancGroup.  These witnesses are in Alabama.  As the government points out, although Alabama is geographically closer to the Middle District of Florida than to northern Virginia, Alexandria, Virginia would be more accessible to these witnesses because of its proximity to two major airports and public transit.  Therefore, this Platt factor does not support transfer.

## I. Docket conditions in each district

Both parties make reasonable arguments about the relative docket conditions in each district.  Farkas points out that in the 12-month period ending September 30, 2009, judges in the Eastern District of Virginia were responsible for an average of 110 criminal felony filings, while their counterparts in the Middle District of Florida each had an average of 80.  However,

13

the median time from filing to disposition of criminal cases in
the two districts is 5.2 months in the Eastern District of
Virginia and 7.3 months in the Middle District of Florida.   The
Ocala courthouse, which would be more convenient for Farkas than
Orlando, has only one resident magistrate judge and one senior
district judge.   Therefore, this <u>Platt</u> factor does not support
transfer.

## J. Special elements that might affect the transfer

A defendant may plead any other special circumstance that
support transfer.   Farkas argues that "the only individuals with
any relationship whatsoever to this case who reside or work in
the Eastern District of Virginia are the government agents
investigating and prosecuting the case."   Def.'s Mem. of Law in
Supp. of Mot. to Transfer at 25.   The government has refuted that
argument by pointing to Allen and other witnesses who either live
in the Eastern District of Virginia or live nearer to it than to
the Middle District of Florida.   Farkas also argues that "the
vast majority of the acts alleged in the indictment are alleged
to have occurred in or around Florida and Alabama, not in the
Eastern District of Virginia."   <u>Id.</u>   Both of these claims are not
special elements, but merely extensions of Farkas's earlier
arguments which have already been addressed.

During oral argument, Farkas's attorney expressed serious
concerns about working from Virginia with a client who is located

14

in Florida. Understandably, Farkas's attorney prefers to meet with Farkas in person to review documents.  However, as previously discussed, the availability of the evidence in digital format allows for web conferencing, making in-person contact less important than it was in the past.  Moreover, the Court has authorized under the Criminal Justice Act considerable financial resources not only for attorney's fees, but for legal support staff and attorney travel, and the trial has been continued from November 1, 2010 to February 22, 2011 to give Farkas and his counsel nearly four additional months to review documents and strategize.  Therefore, this <u>Platt</u> factor does not support transfer.

## IV. CONCLUSION

For the reasons stated in open court and within this memorandum opinion, Defendant's Motion to Transfer the Proceedings in this Matter for Trial has been denied.  An appropriate order will issue with this opinion.

Entered this 24th day of September, 2010.


Alexandria, Virginia

_____ /s/ 

Leonie M. Brinkema
United States District Judge

15