1

```
                UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                     ALEXANDRIA DIVISION

UNITED STATES OF AMERICA    .        Criminal No. 1:10cr200
                            .
      vs.                   .        Alexandria, Virginia
                            .        October 22, 2010
LEE BENTLEY FARKAS,         .        9:00 a.m.
                            .
            Defendant.      .
                            .
.  .  .  .  .  .  .  .  .  .  .
```

```
                 TRANSCRIPT OF MOTION HEARING
            BEFORE THE HONORABLE LEONIE M. BRINKEMA
                  UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

```
FOR THE GOVERNMENT:            PAUL J. NATHANSON, AUSA
                               United States Attorney's Office
                               2100 Jamieson Avenue
                               Alexandria, VA 22314
                                 and
                               BRIGHAM Q. CANNON, ESQ.
                               PATRICK F. STOKES, ESQ.
                               United States Department of Justice
                               Criminal Division, Fraud Section
                               1400 New York Avenue, N.W.
                               Washington, D.C. 20005


FOR THE DEFENDANT:             WILLIAM B. CUMMINGS, ESQ.
                               William B. Cummings, P.C.
                               P.O. Box 1177
                               Alexandria, VA 22313


OFFICIAL COURT REPORTER:       ANNELIESE J. THOMSON, RDR, CRR
                               U.S. District Court, Fifth Floor
                               401 Courthouse Square
                               Alexandria, VA 22314
                               (703)299-8595
```

                      (Pages 1 - 10)


          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1                    P R O C E E D I N G S

2                    (Defendant present.)

3          THE CLERK:  Criminal Case 10-200, United States of

4    America v. Lee Bentley Farkas.  Would counsel please note their

5    appearances for the record.

6          MR. NATHANSON:  Good morning, Your Honor.  Paul

7    Nathanson, Brigham Cannon, and Patrick Stokes for the United

8    States.

9          THE COURT:  Good morning.

10         MR. NATHANSON:  Mr. Cannon will be handling the matter

11   in court today.

12         THE COURT:  All right.

13         MR. CUMMINGS:  Good morning, Your Honor.  William

14   Cummings for the defendant.  Mr. Farkas is here with me.

15         THE COURT:  All right.  Mr. Cummings, this is your

16   motion to amend the terms and conditions of defendant's pretrial

17   release.  We've read the motion, we've read the opposition from

18   the government, and we're fully -- and I've talked with Pretrial

19   Services about this.

20         Your client in my view was correctly assessed to be a

21   flight risk by the magistrate judge who first heard this case down

22   in Florida.  The nature of the crime, the potential exposure that

23   he has if convicted are -- and his resources, even though many are

24   tied up, there appear to be some that are not, all strongly

25   support the government's view and the finding of the magistrate

1   judge that there is flight risk, and your client has the following

2   choice:  He can be stepped back and sit in jail until this case is

3   over, or he's going to have to comply with the conditions of

4   release, one of which is GPS monitoring.

5          Now, I talked with Pretrial this morning, because if, in

6   fact, the unit is hurting his leg or chafing the leg, Pretrial can

7   remove it and put it on his other leg, in other words, to give the

8   leg a break, and certainly that could be accommodated, but the GPS

9   monitoring is the only reasonably reliable system that they have

10  unless you have come up with some other device that would give an

11  immediate signal if the bracelet is tampered with.  It would give

12  the authorities the best shot at, quite frankly, keeping your

13  client from fleeing or finding him.

14         So I've read your papers, but I don't find any

15  compelling argument or issue in them.  I'm also concerned even

16  though it's been sort of tried to be made to be de minimis, the

17  $80,000 of gym equipment that was traded for credit on the overdue

18  rent.

19         MR. CUMMINGS:  The 80,000 was the rent.  The equipment

20  was worth about 5- or 10,000 dollars.

21         THE COURT:  Well, it depends on how you value something,

22  but in any case, it was equipment that should not have been

23  bartered or sold or exchanged without clearance from Pretrial

24  Services and/or the Court, because it was a condition of the bond

25  that there would not be any sale of assets, and that clearly

1   happened, and, you know, you acknowledge that, which is the proper

2   thing to do.

3          And there are other issues about whether there's been

4   complete frankness, one of which, by the way, which is not in any

5   of the papers, that concerns me is I keep hearing rumblings about

6   Mr. Farkas traveling to Kentucky to talk to an attorney.  He's

7   been up here in Washington, D.C., talking to attorneys.

8          Now, you're his court-appointed attorney, but if there

9   are other attorneys working for him on this case whom he is

10  paying, then we have another problem.

11         MR. CUMMINGS:  There are other attorneys he wants to

12  pay, Your Honor, and because they continue to hope to get into

13  this case with the D&O insurance, they have to be monitoring this

14  case, and so they are monitoring this case, and I'm hoping that

15  they will find the ability to get in this case and remove me from

16  a CJA matter.

17         THE COURT:  And reimburse the CJA fund.

18         MR. CUMMINGS:  Oh, they understand that obligation

19  there, absolutely, Your Honor, no question about that, but, you

20  know, I keep hearing that they're almost there, but it hasn't been

21  accomplished yet.

22         THE COURT:  All right.

23         MR. CUMMINGS:  So I don't think it's inappropriate for

24  them to be staying with him, and these other people have not

25  yet -- several of them, I don't know if anyone's been paid

1  anything, but certainly they -- some I know have not been paid,

2  but they have been -- they've been counseled to see whether or not

3  they would get into the case if there was funds to pay them, and I

4  think that's an appropriate thing for attorneys to do is to meet

5  with people and see whether or not they can get a feel for the

6  case and offer some ideas and suggestions in order to persuade the

7  client that they could be helpful to them and do that with the

8  expectation that they will be paid if and when the funds are

9  available.

10         THE COURT:  All right.

11         MR. CUMMINGS:  This is a difficult situation.

12         THE COURT:  If that's the case, that's fine, but my

13  concern is, you know, if there's money going to attorneys --

14         MR. CUMMINGS:  Oh, I understand that.

15         THE COURT:  Yeah.

16         MR. CUMMINGS:  I understand that, and he understands

17  that, but I did want to take, take some issue with the Court's

18  statement that the magistrate judge felt that there was a risk of

19  flight.  I think the magistrate judge in his opinion said that

20  basically the fact that the government now has tied up all of his

21  assets pretty well eliminates any risk of flight.  So he says in

22  his memorandum opinion.

23         THE COURT:  Well, he may have said that, but the order

24  that he entered reflects that he still felt that the GPS

25  monitoring was appropriate, and regardless, I mean, ultimately,

1    the case is now in this court.  I've got the responsibility for

2    making sure the defendant appears --

3            MR. CUMMINGS:  No question about that.

4            THE COURT:  -- and I don't find anything in the motion

5    that supports any change of conditions other than, as I said,

6    clearly if the, if the unit is bothering the leg that it's on, it

7    should be put on the other leg, and it may be that every month or

8    so it has to be switched back and forth if it's chafing or causing

9    some sort of a problem, but we have several defendants in this

10   court using that same unit, and we've not had complaints about any

11   leg injury.

12           So I just, I want you to know there is -- that option is

13   out there, and he can make that request of the pretrial people who

14   are monitoring him to change leg, but that unit is the unit we are

15   currently using in this court with some of our defendants.

16           MR. CUMMINGS:  I understand, Your Honor.  I want to

17   again point out, Your Honor, the dicta that was in the *Tortora*

18   case that the government cited in its brief and they quoted in

19   their brief is, I think, an interesting observation that the First

20   Circuit made in that the GPS device is good for an early detection

21   of flight, in other words, soon after the person is released, to

22   see whether or not he or she is going to, in fact, abide by the

23   terms and conditions.

24           This has now been four months, 120 days, and Mr. Farkas

25   has made no indication he's going anywhere except to the places

1  he's allowed to go, and he's diligently working on his offense.

2  So, I mean, it's a -- and he has no history of overseas travel of

3  any significant nature.

4         So I just wanted to point that out to the Court, that

5  it's now been a significant period of time when he has with the

6  exception, as you say, of that incident, and the factual pattern

7  was described to me where he basically was given little choice by

8  the landlord, and certainly he should have stopped and said:  I'm

9  sorry, I have to call the court and see if I can abide by your

10  terms.  He did not do that.

11         But, you know, it was 80,000 and a continuing increasing

12  rent that he couldn't pay versus just releasing the equipment,

13  which was of significantly less value than the overdue rent.

14         THE COURT:  All right.

15         MR. CUMMINGS:  So he certainly apologizes for not having

16  done that, but that's no indication of any flight risk.  I mean,

17  it's a violation, yes, of the terms and conditions set forth, but

18  it's certainly of no indication of any increased risk of flight.

19         I realize I'm arguing against your order.  I'm not

20  trying to, you know, to be unprofessional, but I just want to at

21  least set forth that he is doing all he can to abide by the

22  conditions, and we filed this motion and set forth our rationale

23  for why we wanted it and his reasons and the discomfort and the

24  inconvenience.

25         He has to spend one hour a day in front of an electric

1  plug while the thing is recharging.  He can't take it off.  He has

2  to stand there and plug it into an outlet because it's a

3  self-contained unit.  So, I mean --

4          THE COURT:  Well, there's no question it's a nuisance,

5  but it's a big improvement over sitting in a jail cell.

6          MR. CUMMINGS:  We're not asking for that alternative.

7          THE COURT:  All right, I didn't think you were.

8          Let me hear from the government.  I'm not even touching

9  on this issue about whether there was full disclosure of all

10 financial interests to Pretrial Services.  I don't think I need to

11 even get into that.

12         MR. CANNON:  Then, Your Honor, the only thing I would

13 add is to the extent the defendant wants to come back and make

14 another petition for modification of the conditions of release, it

15 would be a perfect opportunity for the defendant to make that full

16 disclosure to the Court of all of his assets.

17         Given that one of the factors the Court must consider in

18 determining what condition or combination of conditions is

19 appropriate, the nature and characteristics of the defendant or

20 the history and characteristics of the defendant, that would be

21 relevant to the Court's decision or any future decision to modify

22 those conditions.

23         THE COURT:  Well, is it the government's position after

24 all this time of investigation that you believe that there are

25 still financial assets of the defendant that you are not aware of?

1     MR. CANNON:  I'm not willing to represent that we, we

2 know all of his assets.  I mean, there are several transactions

3 that we outlined really in our detention memo more completely in

4 Florida but of the defendant moving assets to different

5 individuals or different entities over which we still believe he

6 has some control, and so maybe we'd never be able to fully

7 determine every single dollar that the defendant has control over,

8 but to the extent the defendant wants to make this motion, we

9 believe it would be appropriate for him to make the full

10 disclosure that, that he recognizes apparently in his response

11 motion that was not made to pretrial in Florida.

12     THE COURT:  I'll not going to hear seriatim motion after

13 motion about the bond.  The bond is what it is.  I'm leaving it in

14 place.  If you want to pursue with Mr. Cummings some further issue

15 about disclosure of assets, that's a separate matter, which is why

16 I did not use that issue as one of the bases for ruling as I'm

17 ruling today.  I think that opens cans of worms that I don't need

18 to address.

19     So I've ruled for the reasons I've stated, Mr. Cummings.

20 I'm denying the motion, again advising you that if your client

21 needs to change legs, we can have that taken care of, and that's

22 the order -- that will be the order of the Court.  Thank you.

23     MR. CUMMINGS:  We won't need a separate order for that?

24 Mr. Arnett can tell that to Mr. Coomer; is that what you're

25 saying?

1          THE COURT:  Mr. Arnett is in the courtroom right now --

2          MR. CUMMINGS:  Right.

3          THE COURT:  -- but in the order that I will issue today

4    that denied your motion, I will indicate that if the defendant is

5    having, you know, genuine physical problems with the unit on one

6    leg, he may request that Pretrial Services remove it from that leg

7    and put it on the other leg, all right?  So that will be in the

8    order.  And that can be done even on a monthly basis -- on a

9    routine basis if it's chafing or something like that that's

10   creating the problem.

11         MR. CUMMINGS:  Thank you, Your Honor.

12         THE COURT:  All right?  Thank you.

13         You're free to go.

14                        (Which were all the proceedings

15                         had at this time.)

16

17              CERTIFICATE OF THE REPORTER

18      I certify that the foregoing is a correct transcript of the

19   record of proceedings in the above-entitled matter.

20

21

22                          _____/s/_____

23                          Anneliese J. Thomson

24

25