**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:10-cr-200 (LMB) |
| | : | |
| LEE BENTLEY FARKAS, | : | |
| | : | |
| Defendant. | : | |

**BRIEF IN SUPPORT OF TROUTMAN SANDERS LLP AND TAYLOR, BEAN &
WHITAKER MORTGAGE CORP.'S MOTION TO QUASH SUBPOENA**

On January 19, 2011 Defendant, by and through his counsel of record, moved this Court

for an Order directing subpoenas duces tecum to be issued pursuant to Federal Rule of Criminal

Procedure 17(c) requiring Troutman Sanders LLP ("Troutman Sanders" or the "Firm") and four

other entities to produce documents prior to trial.  (*See* Mem. in Supp. of Def.'s Mot. for

Issuance of Subpoenas Duces Tecum Pursuant to Rule 17(c), ECF No. 116.)  On January 20,

2011, this Court entered an Order directing the Clerk of the Court to issue the five requested

subpoenas (ECF No. 119), and a subpoena directed to Troutman Sanders LLP was issued by the

clerk that same day (the "Subpoena").[1]  Troutman Sanders agreed to waive formal service of the

Subpoena on January 27, 2011.  Pursuant to Rule 17(c)(2), this Brief is filed by Troutman

Sanders on behalf of the Firm and its client, Taylor, Bean & Whitaker Mortgage Corp. ("TBW"

or the "Debtor"), in support of Troutman Sanders LLP and Taylor, Bean & Whitaker Mortgage

Corp.'s Motion to Quash Subpoena, which is filed contemporaneously herewith.

**INTRODUCTION**

Troutman Sanders is a law firm that currently represents TBW as Special Counsel to the

Debtor in the bankruptcy action pending in the United States Bankruptcy Court for the Middle

---

[1] A copy of the Subpoena directed to Troutman Sanders LLP is attached hereto as Exhibit A.

District of Florida, Case No. 3:09-bk-07047-JAF. Prior to representing TBW in the pending

bankruptcy action, Troutman Sanders was retained in June 2009 by TBW, Defendant's former

employer, to conduct an internal investigation into issues raised by Deloitte LLP during its audit

of TBW's financial statements for the fiscal year ending March 31, 2009. The investigation was

never concluded because federal agents executed a search warrant on TBW's corporate

headquarters on August 3, 2009, and TBW's business operations subsequently ceased on August

5, 2009. Defendant, Mr. Farkas, who was TBW's Chairman and majority shareholder, was

subsequently indicted on charges of conspiracy, bank fraud, wire fraud, and securities fraud

under 18 USC §§ 1349, 1344, 1343, and 1348, respectively. Troutman Sanders' work during the

internal investigation was conducted on behalf of its client, TBW, and TBW has not waived its

attorney-client privilege as to any communications, nor has it or Troutman Sanders waived the

right to withhold documents and materials protected by the work product doctrine.

The Subpoena issued by Defendant requires that Troutman Sanders produce the entirety

of its privileged and protected documents regarding the investigation, including its internal

memoranda, attorney notes, and emails. In full, the Subpoena seeks:

> In accessible electronic format: (A) all documents pertaining to services
> provided by TROUTMAN SANDERS, LLP to TBW, or work performed by
> TROUTMAN SANDERS, LLP on behalf of TBW, relating to or in connection
> with TROUTMAN SANDERS' internal investigation of and on behalf of TBW,
> specifically including, but not limited to, all witness interview memoranda,
> including handwritten notes and emails discussing such witness interviews
> relating to the said investigation; all drafts and final versions of reports of
> findings of the investigation; all invoices pertaining to the investigation; and any
> and all internal TROUTMAN SANDERS emails discussing, relating to or
> referring to the investigation.

(Exhibit A.)

The Subpoena must be quashed for the principal reason that it seeks the production by

Troutman Sanders of documents and information that are protected from disclosure under the

attorney-client privilege and/or work product doctrine.  Whether viewed in the civil or criminal

context, Defendant's requests fly in the face of long-standing principles protecting attorney-

client communications and attorney notes and mental impressions from disclosure.  *See Upjohn*

*Co. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the

privileges for confidential communications known to common law."); *see also United States v.*

*Under Seal (In re Grand Jury Proceedings #5)*, 401 F.3d 247, 250 (4th Cir. 2005) (explaining

that the work product doctrine "is premised on the idea that 'not even the most liberal of

discovery theories can justify unwarranted inquires into the files and the mental impressions of

an attorney.'") (citation omitted).

By requesting all interview memoranda, notes, and emails discussing interviews, and all

internal Troutman Sanders' emails regarding the investigation, it is evident that Defendants seeks

precisely the type of information that is protected from disclosure.  Thus, the Subpoena must be

quashed to protect Troutman Sanders' privileged communications and protected work product

from disclosure.

Not only does Defendant seek the entirety of Troutman Sanders' internal files of

privileged memoranda, notes, and communications regarding the investigation, Defendant has

not, and cannot, satisfy the criteria for obtaining evidence prior to trial set forth by the Supreme

Court of the United States in *United States v. Nixon*.  The Subpoena clearly is nothing more than

a "fishing expedition" – an attempt by Defendant to conduct pretrial discovery, which is not

permitted under the Federal Rules of Criminal Procedure.  *See United States v. Nixon*, 418 U.S.

683, 699-700 (1974).  Consequently, the Subpoena should be quashed for two reasons: (1) the

subpoenaed documents and information are protected by the attorney-client privilege and/or

work product doctrine; and (2) Defendant has failed to satisfy the *Nixon* criteria.

## ARGUMENT AND CITATION OF AUTHORITY

I.      **The Subpoena Must Be Quashed Because It Seeks Information that Is Protected from Disclosure under the Attorney-Client Privilege and/or Work Product Doctrine.**

The "[a]ttorney-client privilege protects confidential communications between the client and the attorney," and is "the oldest of the privileges for confidential communications known to the common law." *United States v. Under Seal (In re Grand Jury Proceeding # 5)*, 401 F.3d 247, 250 (4th Cir. 2005) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "Because the attorney-client privilege exists for the benefit of the client, the client holds the privilege." *Id.* The work product doctrine, on the other hand, "protects an attorney's work done in preparation for litigation." *In re Grand Jury Proceeding #5*, 401 F.3d at 250; *see also Upjohn*, 449 U.S. at 400-01. Because the work product doctrine "protects not just the attorney-client relationship but the interests of attorneys to their own work product, the attorney, as well as the client, hold the privilege." *In re Grand Jury Proceeding #5*, 401 F.3d at 250 (citation omitted).

In *Upjohn*, the Supreme Court explained that certain documents may be protected under both the attorney-client privilege and the work product doctrine. *See Upjohn*, 449 U.S. at 401. The Supreme Court explained that work product that reveals the attorney's mental processes *and* an attorney-client communication is both privileged and protected under the work product doctrine. In particular, regarding attorney notes and memoranda of oral statements made in interviews, the Supreme Court stated, "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Id.* at 399 (citations omitted); *see also In re Grand Jury Proceeding #5*, 401 F.3d at 250 ("Opinion work product, which does contain the fruit of an attorney's mental processes, is 'more scrupulously protected as it represents the actual thoughts and impressions of the attorney.'") (citation omitted).

4

Here, TBW has not waived the attorney-client privilege as to communications, and neither TBW nor Troutman Sanders has waived the right to withhold documents and information pursuant to the work product privilege. In connection with the internal investigation, Troutman Sanders interviewed TBW executives and employees and generated attorney notes, internal memoranda, and emails regarding the investigation. Troutman Sanders' accounts of interviews of TBW executives and employees, which are contained in attorney notes and internal memoranda, document confidential attorney-client communications and clearly are protected from disclosure under the attorney-client privilege. *See Upjohn*, 449 U.S. at 401; *In re Grand Jury Proceeding #5*, 401 F.3d at 250. The attorneys' notes and memoranda, however, not only document confidential attorney-client communications; they also contain the attorneys' opinions and "mental processes in evaluating the communications," and are therefore protected under both the attorney-client privilege and work product doctrine. *See Upjohn*, 449 U.S. at 401. Similarly, Troutman Sanders' internal emails regarding the investigation are protected from disclosure as either, or both, attorney-client communications and/or intra-firm correspondence documenting the attorneys' opinions and mental impressions regarding the investigation as it was ongoing.

Putting aside the fact that pretrial discovery is not permitted under the Federal Rules of Criminal Procedure, *see Nixon*, 418 U.S. at 683, even in the context of civil discovery no law firm, such as Troutman Sanders, would be compelled to produce its internal files of privileged and protected documents and information. *See Upjohn*, 449 U.S. at 400 (explaining that in civil litigation, courts are to "protect against disclosure . . . the mental impressions, conclusions, opinions, or legal theories of an attorney") (quoting Fed. R. Civ. P. 26); *see also In re Grand Jury Proceeding #5*, 401 F.3d at 250 ("not even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney."). Furthermore, even

if Defendant argues that it would be more convenient for him in preparing his defense to obtain

Troutman Sanders' files on the investigation, as the Supreme Court has stated, "such

considerations of convenience do not overcome the policies served by the attorney-client

privilege." *Upjohn*, 449 U.S. at 396.  Consequently, the Subpoena must be quashed because it

seeks the production of Troutman Sanders' privileged and protected documents and information

regarding the investigation.

**II.**   **The Subpoena Fails to Satisfy the Criteria Set Forth in *United States v. Nixon*.**

Even if the Subpoena were not improper due to its request for all of Troutman Sanders'

privileged and protected communications, notes, and internal memoranda, it may be quashed for

the simple reason that it is procedurally defective in that it fails to satisfy the criteria set forth in

*United States v. Nixon*.  The Subpoena in this case was issued pursuant to Federal Rule of

Criminal Procedure 17(c), which "implements the Sixth Amendment guarantee that an accused

have compulsory process to secure evidence in his favor."  *United States v. Caro*, 597 F.3d 608,

619-620 (4th Cir. 2010) (quoting *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir.

1988)).  The rule provides:

> A subpoena may order the witness to produce any books, papers,
> documents, data or other objects the subpoena designates. The
> court may direct the witness to produce the designated items in
> court before trial or before they are to be offered in evidence.
> When the items arrive, the court may permit the parties and their
> attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c).

There is no general Constitutional right to discovery in a criminal case.  *United States v.*

*Williams*, No. 1:09-CR-414, 2010 U.S. Dist. LEXIS 129431, at *4-6 (E.D. Va. Dec. 6, 2010)

(citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987)).  In contrast to civil litigation, in

which parties are given wide berth to conduct discovery under the liberal provisions of the

Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure provide for pretrial

production of evidence only under very limited circumstances.  Subpoenas duces tecum in

criminal cases are "not intended to provide a means of discovery for criminal cases," but rather

are to be implemented "to expedite the trial by providing a time and place before trial for the

inspection of subpoenaed materials."  *United States v. Williams*, 2010 U.S. Dist. LEXIS 129431,

at *4-6 (quoting *Nixon,* 418 U.S. at 698-99); *see also United States v. Marshall,* No. CR-08-

50079-02, 2010 U.S. Dist. LEXIS 32796, at *4-5 (D.S.D. Apr. 1, 2010).  Thus, Rule 17(c) may

not be utilized as a discovery device.  *Caro*, 597 F.3d at 619-620; *see also Marshall*, 2010 U.S.

Dist. LEXIS 32796, at *4-5 (stating Rule 17 is not intended to provide a means to obtain

discovery); *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992) (explaining that a

subpoena duces tecum is not a discovery device).

        In *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court set forth the ground

rules for serving a Rule 17 subpoena in a criminal case.  Under *Nixon*, to issue a subpoena for

production of documents prior to trial, the requesting party must show that: (1) the documents

are evidentiary and relevant; (2) the documents are not otherwise procurable reasonably in

advance of trial by exercise of due diligence; (3) the party cannot properly prepare for trial

without such production and inspection in advance of trial and that the failure to obtain such

inspection may tend unreasonably to delay the trial; and (4) the application is made in good faith

and is not intended as a general "fishing expedition."  *Nixon*, 418 U.S. at 699-700.  Courts have

generally synthesized these requirements into a three-prong test, as set forth in *Nixon*.  *Id.* at 700.

Accordingly, a defendant seeking a Rule 17(c) subpoena must clear three hurdles: (1) relevancy;

(2) admissibility; and (3) specificity.  *Caro*, 597 F.3d at 619-620; *see also Williams*, 2010 U.S.

Dist. LEXIS 129431, at *4-7; *United States v. McDonald*, No. 1:10-CR-29, 2010 U.S. Dist.

LEXIS 41090, at *8 (E.D. Va. Apr. 26, 2010). Here, Defendant has not, and cannot, satisfy the threshold requirements for issuance of a Rule 17 subpoena.

### A. Defendant fails to describe with specificity the information to be produced.

A Rule 17(c) subpoena must "establish with sufficient specificity the evidentiary nature of the requested materials." *United States v. Arditti*, 955 F.2d at 346. "The specificity requirement . . . is designed to ensure that the use of trial subpoenas is limited to securing the presence at trial of particular documents or sharply defined categories of documents." *United States v. Crosland*, 821 F. Supp. 1123, 1129 (E.D. Va. 1993). Defendant, however, fails to describe specific documents for production. Rather, he casts a wide net by such general descriptions as "all documents pertaining to . . . relating to or in connection with . . . [the] internal investigation." (*See* Exhibit A.) The Subpoena widens the net by seeking handwritten notes, emails, drafts and final versions of documents, and internal communications "discussing, relating to or referring to" legal services provided by Troutman Sanders to TBW. (*Id.*) Even in the context of the liberal scope of discovery in a civil proceeding, and even if these documents were not privileged, the Subpoena would be deemed overly broad. In the context of a Rule 17(c) subpoena, it is clearly nothing more than a fishing expedition. *See United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2010) (finding that subpoena lacking in specificity was "merely fishing for evidence" that might support defendant's theory, as if he were in the discovery phase of a civil action), *cert. denied*, 131 S. Ct. 427 (2010); *see also Crosland*, 821 F. Supp. at 1129 ("Without the requirement that documents be specifically identified by the trial subpoena, such subpoenas could be utilized for the type of discovery-oriented document requests decried as 'fishing expeditions,' and expressly prohibited by the Supreme Court.").

The "specificity and relevance elements require more than the title of a document and conjecture as to its contents," *United States v. Marshall*, 2010 U.S. Dist. LEXIS 32796 at \*4-5, yet Defendant does not even provide document titles or purport to describe the contents of the subpoenaed materials.  Defendant "can only speculate as to what the requested information would [ ] show[ ]," and "his requested Rule 17(c) subpoena[] cast[s] a wide net that betokens a 'general fishing expedition.'"  *Caro*, 597 F.3d at 619-620 (citation omitted).

In *United States v. Williams*, this Court recently examined the defendant's burden when seeking pre-trial evidence pursuant to a Rule 17(c) subpoena:

> A request for "[a]ll documents, reports, statements, interviews, notes, evidence, etc. relating to Prince William County Police Dept. Case No.06-006630," is perhaps a paradigmatic example of a "fishing expedition."  This is not a veiled attempt to end-run the limited discovery mechanisms in the Federal Rules of Criminal Procedure; it is a run up the middle.  As this Court has stated, "[t]he specificity requirement announced in *Nixon* is designed to ensure that the use of trial subpoenas is limited to securing the presence at trial of particular documents or sharply defined categories of documents." "All documents and evidence in possession of the MCPD relating to the case," which is effectively what the Subpoena requests, is not limited to "particular" documents or "categories" of documents - it is everything.  Accordingly, the Court finds the Subpoena must be quashed as insufficiently specific under the *Nixon* test."

2010 U.S. Dist. LEXIS 129431, at \*5-6 (citations omitted).  Similarly, the Subpoena seeks the production of "everything" – the entirety of Troutman Sanders' documents and emails generated in connection with the internal investigation, not "particular documents or sharply defined categories of documents." *Id.*  Thus, the Subpoena is overly broad and not targeted to obtaining specific documents.

**B.    Defendant has failed to show that the subpoenaed materials are relevant or admissible.**

Defendant has made no effort to establish the relevance of the information requested, but merely states in a vague assertion that "during his review of the documents selected by the

Government for disclosure, counsel . . . has become aware that there are significant amounts of information not included in the disclosures, and that those omissions contain exculpatory material that would support Mr. Farkas' defense." (ECF 116 at 2.) If Defendant is able to determine that the omitted information "contain[s] exculpatory material," he should be able to identify the specific documents omitted and explain their relevance to his defense. To the contrary, Defendant's vague and general description of the information requested does not reveal to Troutman Sanders (or the other subpoenaed witnesses) specifically what information has been omitted or the nature of his purported defense to the charges, and, thus, without a crystal ball, it would be pure speculation to guess as to the potential relevance of the requested materials. [2]

For instance, the Subpoena requires production of "all invoices pertaining to the investigation." The possible relevance of Troutman Sanders' invoices to TBW for legal services to Mr. Farkas' defense to the criminal charges challenges the imagination. Although Defendant has stated in general terms his reasons for requesting the information, he has not set forth the contents of the subpoenaed materials or made any effort to identify particular documents for production or why he believes they would support his defense. Thus, Defendant forces the Court to speculate as to the relevance of the information and attempts "to use the subpoena duces tecum as a discovery device which it is not." *United States v. Arditti*, 955 F.2d at 346; *see also*

---

[2] To the extent that Defendant seeks the production of non-privileged documents collected by Troutman Sanders during the investigation, Troutman Sanders believes that these documents are available to Defendant in the disclosures by the Government pursuant to Rule 16(a)(1)(E) and/or the documents produced to Defendant pursuant to the subpoena served upon TBW by Defendant, which is attached hereto as Exhibit B. However, due to the magnitude of documents collected from TBW by the Government pursuant to a search warrant and subpoenas it issued to TBW, and the volume of documents produced to Defendant by TBW, Troutman Sanders cannot be one-hundred percent certain that all non-privileged documents have been made available to Defendant. Nevertheless, it is Troutman Sanders' belief that Defendant currently has access to nearly all, if not all, non-privileged documents collected by Troutman Sanders during the investigation.

*United States v. Fowler*, 932 F.2d 306, 311-12 (4th Cir.1991) (affirming district court's denial of application for subpoenas because district court properly determined that information sought was irrelevant and had no evidentiary value).  Defendant's unwarranted fishing expedition should not be sanctioned.

Defendant likewise has made no showing as to the admissibility of the requested information.  "[A]ny document or other materials, admissible as evidence . . . is subject to subpoena" under Rule 17(c), *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220-221 (1951), but "a Rule 17(c) Subpoena reaches only evidentiary materials – not all discoverable materials," *United States v. Arditti*, 955 F.2d at 346-347 (Goldberg, J., concurring) (quoting *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981)).  Moreover, Defendant's "hope of obtaining favorable evidence" does not justify the issuance of the Subpoena in this case.  *See Caro*, 597 F.3d at 619-620.

Accordingly, the Subpoena should be quashed because it does not meet *Nixon's* specificity, relevancy, and admissibility requirements.  Rule 17(c)(2) provides that "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."  The Supreme Court has held that a Rule 17(c) subpoena is "unreasonable or oppressive" if the requesting party has not satisfied the requirements set forth in *Nixon*.  *See Caro*, 597 F.3d at 620 (citing *Nixon*, 418 U.S. at 699-700).  Thus, because Defendant has not satisfied the specificity, relevancy, and admissibility requirements established in *Nixon*, the Subpoena may be quashed outright, without further analysis.

## CONCLUSION

By requesting the pretrial production of Troutman Sanders' privileged and protected documents and communications related to the investigation, including witness interview

memoranda, attorney notes, and internal emails, Defendant's Rule 17(c) Subpoena disregards the long-standing attorney-client privilege and the work product doctrine, which protects attorneys' mental impressions and thought processes from disclosure.  Notwithstanding *Nixon's* prohibition against pretrial discovery in criminal cases, whether viewed in the civil or criminal context, the Subpoena is improper and must be quashed because it seeks Troutman Sanders' privileged and protected information.

Furthermore, the Subpoena wholly fails to meet the *Nixon* requirements of specificity, relevance, and admissibility.  Defendant provides only a general and vague description of the subpoenaed information, which includes "everything" related to the investigation, including Troutman Sanders' privileged and protected memoranda, notes, and emails.  Defendant provides no rationale for production, except the assertion that he has identified "omissions" in the Government's disclosures, which he suspects may contain unspecified "exculpatory material" that would support his defense.  Thus, the Subpoena must be quashed because it is precisely the type of unwarranted "fishing expedition" that is disallowed under the Federal Rules of Criminal Procedure.  For these and all of the foregoing reasons, this Court should exercise its authority to quash Defendant's Rule 17(c) Subpoena.

This 8th day of February, 2011.

TROUTMAN SANDERS LLP and TAYLOR,
BEAN & WHITAKER MORTGAGE CORP.


By:_____/s/_____
            Of Counsel

Russell V. Palmore, Jr., VSB #13451
russ.palmore@troutmansanders.com
Bradfute W. Davenport, Jr., VSB #12848
brad.davenport@troutmansanders.com

TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone:  (804) 697-1200
Facsimile:  (804) 697-1339
*Counsel for Troutman Sanders LLP and*
*Taylor, Bean & Whitaker Mortgage Corp.*

## CERTIFICATE OF SERVICE

I certify that on this 8th day of February 2011, a true copy of the foregoing was

electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Paul J. Nathanson, Esquire                          William B. Cummings, Esquire
paul.nathanson@usdoj.gov                            wbcpclaw@aol.com
Charles Connolly, Esquire                           William B. Cummings, P.C.
charles.connolly@usdoj.gov                          Post Office Box 1177
United States Attorney's Office for the             Alexandria, Virginia 22313
Eastern District of Virginia
2100 Jamieson Avenue                                *Counsel for Defendant*
Alexandria, Virginia 22314                          *Lee Bentley Farkas*

*Counsel for the United States of America*


                                        _____/s/_____
                                        Russell V. Palmore, Jr., VSB #13451
                                        russ.palmore@troutmansanders.com
                                        Bradfute W. Davenport, Jr., (VSB No. 12848)
                                        brad.davenport@troutmansanders.com
                                        TROUTMAN SANDERS LLP
                                        1001 Haxall Point
                                        Richmond, Virginia  23219
                                        Telephone:  (804) 697-1200
                                        Facsimile:  (804) 697-1339
                                        *Counsel for Troutman Sanders LLP and*
                                        *Taylor, Bean & Whitaker Mortgage Corp.*