IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
MAILROOM
OCT - 9 2015
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Case No. 10-cr-00200-LMB |
| v. ) | |
| ) | Civil Case No. 13-cv-01191-LMB |
| LEE BENTLEY FARKAS, ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT FOR DISQUALIFICATION OF HONORABLE JUDGE LEONIE M. BRINKEMA

| | |
|---|---|
| STATE OF NORTH CAROLINA ) | |
| ) | ss |
| COUNTY OF GRANVILLE ) | |

I, LEE BENTLEY FARKAS, being first duly sworn, hereby swear and aver that the following is true, correct, and accurate to this best of my knowledge and belief:

1. I make this affidavit in support of my accompanying 28 U.S.C. § 144 motion for the disqualification of Judge Leonie M. Brinkema.

2. I am a party in this case of the *United States v. Lee Bentley Farkas*, Criminal Case No. 10-cr-00200-LMB, which is ongoing and was presided over by Judge Brinkema. In this case, I was charged, tried and convicted of bank, securities and wire fraud and conspiracy to commit the same. Judge Brinkema ultimately sentenced me to a 30 year term of imprisonment.

3. Judge Brinkema also adjudicated my 28 U.S.C. § 2255 motion in Civil Case No. 13-cv-01191-LMB and denied all requested relief. Simultaneously, she declined to issue a certificate of appealability and, subsequently, so did the Fourth Circuit Court of Appeals. My § 2255 case, which challenges the validity of my criminal convictions, remains pending in the United States

Supreme Court.

4. I was also a party in each of the cases of *SEC v. Lee B. Farkas*, Case No. 10-cv-00667-LMB and *Lee B. Farkas v. National Union*, Case No. 11-cv-00529-LMB. These cases and my criminal case are all interrelated and they were each presided over by Judge Brinkema.

5. The acts of fraud for which I was charged and convicted had a direct and substantial impact on the nation's financial crisis and economic downturn, particularly during the calendar years of 2006, 2007 and 2008. This was acknowledged and confirmed by various high ranking government officials and this information ultimately reached President Barak Obama, as shown by the following statements by such officials:

(a) "His shockingly brazen scheme poured fuel on the fire of the financial crisis" said Assistant Attorney General Larry A. Breur;

(b) "Mr. Farkas had orchestrated one of the longest and largest bank fraud schemes ever seen" said United States Attorney Neil H. MacBride;

(c) "Through his scheme, Lee Farkas and his coconspirators victimized innocent people and in the process their actions led to the collapse of two major U.S. financial institutions, no doubt a contributing factor to the nation's financial downturn" said Washington, D.C. F.B.I. Assistant Director James McJunkin; and

(d) This was "[t]he most significant criminal prosecution to date that arose from the financial crisis" stated Neil Barofsky, former Special Inspector General for the Troubled Asset Relief Program, as he described Lee Bentley Farkas's prosecution in a letter to President Barak Obama.

6. By significantly effecting the general financial downturn, my alleged financial

conduct negatively effected the financial positions of many individual investors, as shown by prosecuting attorney A.U.S.A. Stokes's statement during my sentencing hearing when he acknowledged that the acts of fraud for which I was charged and convicted contributed to the financial crisis of 2008: "He destroyed lives ... he has caused just staggering economic loss to banks and individuals and others ... That alone, of course, doesn't lead to the economic crisis, the financial crisis of 2008, but it certainly contributes to it. ... So this crime had real impact on individuals, not just banks." Judge Brinkema, who was otherwise quick to correct any inaccurate statement that was made during my sentencing hearing, did not attempt to correct A.U.S.A. Stokes's statements that I "certainly contributed to" the "economic crisis," thus indicating that she believed these statements to be accurate and true.

7. According to what A.U.S.A. Stokes and others said, the acts of fraud for which I was convicted substantially contributed to the economic downturn during the calendar years of 2006, 2007 and 2008 and, thus, Judge Brinkema was a victim of my alleged acts as many of my victims were investors of all types, just like Judge Brinkema was. Judge Brinkema believed that many of my victims were faceless investors, such as herself. Judge Brinkema, at my sentencing hearing, specifically made it known that this was her belief when she stated: "In the Madoff case, that was a direct sort of person to person, true traditional type of fraud. The victims here, many of them were investors." Just as A.U.S.A. Stokes stated at my sentencing hearing: "... this crime had real impact on individuals ...." because "it certainly contribut[ed]" to "the financial crisis of 2008."

8. Judge Brinkema's required Financial Disclosure Reports for the calendar years of 2006, 2007 and 2008, were filed on May 9, 2007, May 12, 2008 and May 5, 2009. In those reports, Judge Brinkema reported that her investments included two primary investment items, BlackRock

Basic Value Mutual Funds ("MDBAX") and American Century Ultra Fund ("TWCUX"), in which, in October of 2007, she had a combined estimated cash value of between $150,000 and $350,000. These two funds, when combined, represented approximately ninety percent (90%) of her investment portfolio. Her subsequent Financial Disclosure Report dated May 5, 2009 valued the same two investments at an estimated cash value of between $60,000 and $140,000, which amounted to an estimated loss of between $90,000 and $210,000, or about sixty percent (60%) of her investment portfolio.

9. Yahoo Finance confirms these amounts of losses in these stocks. During the indicated periods of time, Yahoo Finance reports that Judge Brinkema's investments had a per share value as follows:

|        | **10/11/2007** | **12/31/2007**      | **12/31/2008**      | **03/09/2009**      |
|--------|----------------|---------------------|---------------------|---------------------|
| MDBAX  | $ 33.84        | $ 29.65 (12% loss)  | $ 17.96 (48% loss)  | $ 13.61 (60% loss)  |
| TWCUX  | $ 32.37        | $ 24.94 (23% loss)  | $ 14.45 (55% loss)  | $ 11.91 (63% loss)  |

10. Judge Brinkema, in her Financial Disclosure Report for the calendar year of 2008 (dated May 5, 2009) specifically wrote that her investment losses were "... due to the national economic downturn." This statement, written by the Judge's own hand, leaves no question as to why she believed her losses occurred.

11. Judge Brinkema knew that she was an investor who had suffered substantial investment losses totaling nearly 60% of her investment portfolio by March 9, 2009 due to the "economic downturn." By the time I stepped into her courtroom, Judge Brinkema learned and knew that my acts of alleged fraud had substantially contributed to the 2008 financial crisis. Thus, Judge

Brinkema was a victim, and knew she was a victim, of the acts of fraud for which I was charged and convicted. My alleged acts of fraud contributed the most to the decline of the economic downturn in the same years that Judge Brinkema's investment losses were the greatest.

12. Even prior to Judge Brinkema presiding over any of the cases in which I was a party, she had learned, from extrajudicial sources that I stood accused of having committed financial crimes that had a substantial effect on the nation's financial crisis and economic downturn. This in turn caused her to know, prior to any of my court proceedings, that a substantial portion of her personal investment losses, as she herself reported in her 2006, 2007 and 2008 Financial Disclosure Reports, occurred as a direct result of my alleged acts of fraud. My role in the financial crisis was highlighted during my trial and was headlined by extrajudicial sources, such as in reports by the media. Judge Brinkema, nonetheless, presided over and adjudicated every aspect of my jury trial, sentenced me to 30 years in prison and denied my 28 U.S.C. § 2255 motion which sought to vacate my criminal convictions.

13. Inconsistent with Judicial Cannon 3 and inconsistent with 28 U.S.C. § 455(a), Judge Brinkema failed to disclose her conflict and failed to recuse herself when she knew and believed that I was in part responsible for her personal investment losses.

14. I, Lee Bentley Farkas, hereby reasonably question the impartiality of Judge Brinkema in my criminal and § 2255 cases and further state that Judge Brinkema, prior to and during each of the aforementioned cases, had a personal bias and prejudice against me based on the reasons and facts set forth herein.

15. I hereby state that it is my opinion and belief that reasonable members of the public would know that Judge Brinkema was aware of and opined that the alleged acts of fraud for which

I was charged and convicted directly and substantially contributed to the economic downturn and the financial crisis of 2008 which in turn substantially and directly decreased the actual value of her investments as identified above.

16. I, Lee Bentley Farkas, state that it is my opinion and belief that reasonable members of the public, knowing all of the facts set forth herein, would be convinced that Judge Brinkema is and was biased and prejudiced against me throughout the entire litigation processes of my criminal and § 2255 cases, and that members of the public would reasonably question the impartiality of Judge Brinkema to preside over pending or future criminal or civil related motions or matters involving me.

17. Private citizens Mark Bookhammer, Stephanie Kakymiw, Holly Gooch, Jay Holwegner, Gina Carrillo, Mark Hathaway and Kathi Rieber are each reasonable, average, disinterested persons whom I do not know, who are in the public sector and who now have knowledge of the relevant facts and circumstances relating to the basis for my instant motion for disqualification of Judge Brinkema. Each of these persons, after having become familiar with the relevant facts and circumstances, has stated that the knowledge of these facts and circumstances caused them to believe that Judge Brinkema had, and continues to have, a bias and prejudice against me in this case. Each of these persons, after becoming familiar with the same relevant facts and circumstances, has stated that the knowledge of these facts and circumstances causes each of them to earnestly question Judge Brinkema's impartiality to preside over any matters, past, present or in the future, which involve me in these actions.

18. I knew of no legal basis nor had any obligation to investigate Judge Brinkema's personal finances and did not do so until I after I was alerted near the end of July, 2015 to the facts

set forth herein, when an unsolicited package of information from a total stranger, Janice Grenadier, was received by two attorneys who were engaged to represent me in my § 2255 case. The package contained copies of Judge Brinkema's personal financial disclosures from 2004 through 2014, among other documents.

19. Discovery of the basis for, and incontrovertible evidence of, Judge Brinkema's bias in these cases occurred only after my convictions were final, after my § 2255 motion had been denied by the district court and after the Fourth Circuit Court of Appeals had denied a Certificate of Appealability. These facts were not discovered until after I had already filed a petition for writ of certiorari with the Supreme Court on July 31, 2015, which petition remains pending as of the date this affidavit.

20. Not a single order, ruling, opinion or any other type of legal memorandum has been entered or signed by any judge, including Judge Brinkema, or any appellate court, regarding my criminal case or my pending § 2255 proceeding since the time that I first discovered the facts that form the basis of this affidavit in support of Judge Brinkema's disqualification. Also, I do not have pending and have not filed any motions or petitions of any type since I first discovered these facts.

21. Thus, I clearly am not and have not been holding back on filing this affidavit and motion while waiting for a favorable judicial ruling and then seeking recusal when it was not forthcoming.

22. There is good cause to support the timing of the filing of this affidavit and accompanying motion because I have only recently learned of Judge Brinkema's financial losses and I am filing this affidavit at the first opportunity after discovery of these disqualifying facts. Once I learned of these facts, it then took time to study Judge Brinkema's Financial Reports and to verify

and confirm them as true and accurate copies. It then took me additional time to research Yahoo Finance to identify and prove the amounts of losses incurred by Judge Brinkema's stocks. Furthermore, I am an inmate at a federal prison facility which certainly slowed down this entire process.

23. This affidavit is timely to motions which I will be filing with this Court in the near future.

FURTHER the affiant sayeth naught.

DATED this 21st day of September, 2015.

_____
Lee Bentley Farkas

Subscribed and sworn to before me by Lee Bentley Farkas this 21st day of September, 2015.

THAO THOMPSON
Notary Public
My commission expires: 4.17.2016

-8-